17 January 2021 Good morning. May it please the court. Mr. Jesus Flores pleaded guilty to being a felon in possession of a firearm, and he was sentenced to 104 months on appeal. He raised two issues. One is foreclosed. The remaining issue is whether this court should vacate Mr. Flores' sentence because the record is devoid of evidence to support a base offense level of 26. The government failed to prove that the offense involved a semi-automatic firearm that was capable of accepting a large capacity magazine. But by virtue of having the name of the weapon, can we take judicial notice of the fact that the owner's manual for the Bushmaster XM-15 says that they are semi-automatic with a standard magazine capacity of 30 rounds? I do believe that you could take judicial notice of that fact. However, the commentary requires more. There's a spatial and a temporal requirement. Is that a problem? No. The problem is commentaries can't alter the guidelines. They can help interpret, but they can't alter. So if the commentary is adding more factors to the guideline than are there, then the commentary doesn't apply, the guideline applies. Or at a minimum, it's not plain error for the court to apply only the guideline and not the commentary in that circumstance. What the commentary does here, Judge, is it interprets the phrase, capable of accepting a high capacity magazine. But it adds an element that not only is it capable of accepting it, but it has to have accepted it at the moment in question. So if your car can hold 17 gallons of gas, that's a fact. Whether it actually had 17 gallons of gas at the time is an additional element that isn't anywhere in the guideline. I disagree with the court, and I disagree for this reason. The crime is possession of a firearm. So the circumstances of the offense is the possession itself. Well, he clearly possessed it. No doubt. Okay. And it's a Bushmaster XM-15, which is capable of holding 30 rounds. Correct. And so whether it held those at the time or not isn't the question. It's holding a firearm of that capacity versus one that could only have six bullets or, you know, whatever. There's firearms obviously all across the spectrum. And the danger of the guidelines dealing with here is this kind of mega rifle versus a smaller handgun that has a smaller capacity because of the potential damage that such a weapon can do. So he possessed a weapon that is a vicious kind of weapon. And why isn't that good enough, at least on plain air review, because the commentary seems to be adding to that. Right. And I understand the court's concern. I think one issue here is that in 2006, I believe, Congress did away with the assault weapons ban. And because they did away with the assault weapons ban, the previous statutory reference to what an assault weapon was went away. And so the commission went in and in an attempt to, I guess, keep one portion of the enhancement, they added this language and they added the commentary. And in Stinson, what the Supreme Court says is that commentary that interprets or explains a guideline is authoritative unless it violates the Constitution, a federal statute, or is inconsistent with or plainly erroneous. I don't believe this is inconsistent. But the problem is you're not just having to show all that. You're having to show that it was plain or obvious to the court that the commentary doesn't add to the guideline rather than simply explain or interpret the guideline. And that's the problem you have. You may be right as a facial matter, but you have to go further and show that any judge would have known this. And I think that's a bit of a problem for you in this case. I disagree with the court and I disagree for this reason. First, the guideline and the commentary specifically require the government, who has the burden to prove by preponderance of the evidence enhancements, that the firearm was semi-automatic, attached to or near to a magazine, and that that magazine held 15 or more rounds of ammunition. The error is plain here because a straightforward reading of the relevant guideline provision and commentary is all that's needed to identify what the government… But it's the commentary. And again, the commentary adds something that's not in the guideline. I believe, Judge, that what it does is interpret the phrase in the guideline. And this court most recently in Guillen-Cruz and in Torres said, notwithstanding the absence of case law on point, the error here is plain from the face of the relevant statutes and regulations. In Torres, the court said, any error that can be identified purely by an uncomplicated resort to the language of the guidelines is plain. It's the reason why I provided the court with a handful of cases, unpublished and from other circuits, describing the kind of information that should be included in the PSR, that should be included so that it… to bring everyone's attention basically to the fact that there was no magazine or, conversely, that there was a magazine. And this is how many rounds it contains. So the error was plain here. I think it's clear and it's not contested that the error affected Mr. Flores' substantial rights. In addition to simply resulting in different… What about prong four? I can skip prong three and go to prong four. Yeah, you can. We'll just go by three for now, but… I will definitely get there, Judge. I believe that that's a very important prong, and I intend to address that. I will go backwards to prong three simply for this point. In addition to the fact that different guideline ranges were used, the judge here specifically tied her sentence to the middle of the incorrect guideline range, and she made no statement that that would be her sentence if she was incorrect about the guideline range. What I'm suggesting, what I'm raising the question to you is, look, this is a Bushmaster, and everybody on God's green earth knows now what those things are because they've killed a lot of people in this country, whatever, but they explain what they are in the description. And so what you're saying is that because there's some argument about the capability of it and that sort of thing to admit it is really creates an injustice that reflects on the system itself, and I, for the life of me, don't see how that gets off the ground. But at this point, Judge, I think we have to remember that Congress did away with the assault weapons ban. Congress made these weapons. So what? That doesn't answer this question. So what they did was they took outside of the statutes additional punishments for this person to hold this type of weapon. It was the commission that brought them back in. And I do not disagree with you about the Bushmaster rifle. In fact, it's why I cited Torres Cologne out of the First Circuit, a published case, because in that case the court— So you could not enhance based on a Bushmaster, period. Not alone. You would also have to find that there was attached to it or in close proximity a magazine capable of discharging 15 or more rounds of ammunition. Without that spatial proximity and that temporal proximity, you cannot apply this enhancement. And it's plain from the reading of the guideline commentary. As I was talking about the third prong, not only do we have different ranges, but we have a court that decided to use the middle of the incorrect range. Using that as a reference point, that is eight months higher than what we say is the correct range. And if we use the midpoints as a reference, it is 17 or 18 months higher because there's an odd number of months in the lower range. So that goes to the third prong, right? It actually goes to the fourth—it assists in the third prong. If Melina Martinez is not sufficient for this court, then additionally the court should look to what the district court did here because that aids in meeting the third prong to show that there's a reasonable probability that he would have received a lesser sentence. It is also, however, a factor used in fourth prong analysis. Most recently yesterday in a case that was revised and republished by this court and in Guillen-Cruz, the case that I cited, the substantial disparity was a factor that convinced this court to exercise its fourth prong jurisdiction. In Guillen-Cruz, the disparity was eight months. In the Reyes-Ochoa case that was published just yesterday, the disparity was 20 months. However, that case— What's the phrasing of the fourth prong? The phrasing of the fourth prong is that the error seriously affects the fairness, integrity, and public reputation of judicial proceedings. I cited to a Tenth Circuit case that's Justice Gorsuch's case regarding the fourth prong and how one day in jail should cause the public to be concerned about errors. The problem that we have with your argument is you're taking away the discretion. I mean, if the argument is simply that if the wrong guidelines range was used and the right guideline range would be lower, it's automatic. That's your argument. And in Escalante-Reyes, which was an en banc decision, we said the fourth prong is not automatic. And so you're saying essentially it is because it's always true. I mean, if the exact same guidelines range would result regardless of the application of an enhancement, then we don't have a case. There's no error to begin with. You don't care. It's only when there is a different guidelines range that we're even here to the fourth prong. And your argument is anything that gives you more than one day is harmful and therefore affects the integrity, et cetera, et cetera. So it makes the fourth prong automatic, which we said in Escalante-Reyes it isn't. Two points, Judge. One is that I'm not saying that that is something this court has said. It has looked to the substantial disparity. Who represented this defendant when he pled? The Federal Public Defender's Office. Right, the Federal Public Defender's Office. And now the Federal Public Defender's Office is coming down here and saying, my colleague, it's there, it's straightforward on its face, it offends justice, and he didn't object. Now, that's what we're getting is a whole pattern of these things. And you can't have it both ways. If it's that plain and that simple, then either you're incompetent and you're not doing your job or they're not really that straightforward. And finally, I don't find it offensive to the justice in this thing. What I find offensive is what you're doing is you're taking off the table the powerful insistence of the law that there be a contemporaneous objection. And that's for the reason that these are objections that can be cured at the time of the plea. So either you're sandbagging, which I think is unethical, or there's something else going on here. Can you help me with that? Yes, I can, Judge. Four people made a mistake in the trial court. The first person that made a mistake was the U.S. Attorney's Office because they did not object to the fact that there was insufficient evidence in the PSR. The second person that made a mistake was the probation officer for not providing the court with sufficient evidence. The third person that made a mistake was the defense attorney for not raising the issue, and the last person that made a mistake was the judge. I don't believe that any of those people intended to make a mistake. They're well-intentioned people with— Well, what that suggests is it's not very plain then. It is plain. But your argument is this is plain. It is conspicuous. All plain errors are plain, Judge, and it can't be that the plainness of the error means that it wasn't plain. I do believe that this seriously affects fairness. It's the government's burden. What I'm suggesting to you is the fundamental tension between the argument of plainness and obviousness that's prerequisite to escaping the contemporaneous rule. And your argument now that all the other people missed this. That's what plain error is, Judge. You want to hand off the fault to other people, fine. But what you do when you do that is that you're now arguing against the basic premise that it's obvious. Judge, when we raise issues on plain error, we come to this court with a more difficult burden to carry. So we do not intend to do that. The problem is, though, we see this a lot from the Southern District of Texas Federal Public Defender's Office. I think we as a court have to judge each case as it is without regard to whatever else we're seeing. But I do think this is something that the FPD's office needs to take a look at because you should be having your appellate lawyers involved at the trial stage so that we don't keep having this for the reason that your clients face a higher burden on appeal and for the better reason that maybe we fix the problem, which is the whole reason why you have the contemporaneous objection rules. Again, I'm going to judge this solely on this case regardless of whatever else the FPD's office has done in any other case. But I do think it's an issue that we see time and time again and don't see as much from other FPD offices. And I think that is a concern that you as an appellate attorney for that office needs to address with the people there so that, yes, these errors are dealt with if they are errors at the time of sentencing and handled as they're supposed to be handled. We are taking steps to do so, Judge. I appreciate the advice. And I do believe that this does seriously affect the fairness and integrity of public reputation of judicial proceedings because it was the government's burden in the first instance to come forward with scant evidence, some evidence, an iota of evidence. And if there were any evidence in this record, I wouldn't be here on plenary review. However, there is no evidence, zero evidence. And it is fundamentally unfair for the party with the burden to escape the consequences on review when there's absolutely no evidence. If there was a scant amount of evidence, I would not be here. But I think there is a scant amount because it's a Bushmaster of this kind. And that, of course, is not giving credit to the temporal and spatial requirements of the guideline. Lastly, the obviousness of the errors and other issues that this court has raised. If I can conclude, the government has failed to produce any evidence to meet its burden. The record is devoid of any evidence to support the burden. And this court should vacate the judgment, remand it to the district court to give the government a second chance. All right. Thank you, Mr. Parson. You've saved time for rebuttal. Yes, thank you, Judge. Ms. Akins? May it please the court, good morning. My name is Jessica Akins, and I represent the United States in this appeal. Two thoughts that come to mind immediately is that I don't know that the defendant has sufficiently rebutted this court's precedent in use of Lopez in this case, in terms of the entire appeal is based on an unobjected-to fact. And second, that there is evidence that this weapon did meet the guideline of 2K2.1. First, with regard to Lopez, as you know, this court's precedent of over 25 years is that questions of fact capable of resolution by the district court can never constitute plain error. And I've heard a few who have already mentioned some of the reasons why, is that we're not giving the district court the opportunity to handle a fact issue where fact issues should be handled, which is in the lower court. As you know, this PSR is prepared by a probation officer who takes all the facts known to them at the time, and the PSR is basically a summary of everything known to all the parties. And the district court is entitled to rely on that PSR. It's sufficiently reliable until the defendant shows that it is not. It is actually his burden to point out things that are inaccurate in that report. And at that time, then the government, the judge, would flesh out those fact issues. In this case, both parties had the PSR for eight months. After eight months, the defense attorney filed objections that had to do with a crime of violence regarding a burglary. But there was no mention of this specific fact regarding the dimensions of the weapon. At the sentencing hearing, and I think this is key in terms of evidence, is the defendant implicitly adopted this report. At the very beginning of the sentencing hearing, the judge told the defendant, have you had an opportunity to look at this PSR? The defendant affirmatively said yes. She then further said, if there are inaccuracies in here, you need to let me know. Well, guess what he did? He pointed out two inaccuracies in that report. He firstly told the judge that there was a mistake regarding his cocaine use. And she said, what do you mean? He said, well, the report says that I haven't used drugs in six years. Your Honor, that's actually incorrect. I've been using these drugs for six years. And the judge said, thank you for pointing that out. This is very important, and directed the probation officer at that time in the sentencing hearing to make an addendum to the report to change that fact. And then a little bit further later, he said he objected to the position that the government took on him being a gang member. The PSR dictated that he was a member of the Mexican Mafia. And the defendant said, Your Honor, I was a former member, but I'd like you to notate that I'm not currently a member. So this defendant was given several opportunities to go through this report and find all the inaccuracies. The fact that his defense attorney did not object, and he implicitly denied it. So when you're the AUSA up against an FPD office that sort of routinely claims plain error on appeal, doesn't that heighten your need to kind of go through this with a microscope or a magnifying glass, wherever the right analogy is, and really look for this kind of stuff? For example, do we have all the evidence we need on this Bushmaster issue? Do I need to bring in the owner manual or whatnot or argue that the commentary contradicts the guideline or anything else? Doesn't this kind of heighten, just as a matter of adversarial process, the need for y'all to be vigilant? Because y'all need to look for this stuff too. I understand your point completely, Your Honor. And while I don't think there should be a different standard for people who practice in different districts, this does continue to be an issue. And I think when you look specifically at the PSR, the information that everyone was given, it's very specific. It's very specific in terms of the gun, but the model number and the serial number. And I think at this point, because there were no questions, everyone was operating under the same facts about this assault rifle. Sure sounds like an assault rifle. It does sound like an assault rifle. And there's actually case law from this circuit that discusses this specific .223 caliber Bushmaster and says everyone knows this is basically a civilian M16. Everyone is capable of knowing, having the knowledge about this gun. It seems the argument, at least if we're going to credit the commentary when we're looking at prong two, is that you could have removed the magazine. Is that the idea? I think that the commentary is either or, that it should be attached or nearby to show that it has the magazine. Also, there's a lot of kind of— What I'm trying to understand is, you know, just take something I know more about, a car. Typically, you'll expect that the car has its four tires, so you wouldn't say, well, you have to prove the tire was on the car because it typically would have it, even though it is removable. What is the case with this particular rifle? Is it typically going to have the magazine, or is that something that is typically removed? That's what I'm trying to say. I think it typically has one, and I think—this isn't in the record, but I think my knowledge— It depends on the size of the magazine. True. I think many times they're stored in other areas, and in this situation, when you look at the specific facts, this weapon was a police issue. It was stolen for a captain of the Laredo Police Department. His weapon was stolen, as well as bulletproof vests and a safe. I think many people store magazines in safes, not with the gun. Obviously, that's not a fact before the court, but it's a reasonable inference that the judge could have made. So we can't tell whether it was there or not there— That's correct. —from just knowing that the rifle has such a magazine. We don't know if it was there or not there. We can't make an assumption on that basis. What we have is the probation officer— But then that's your point about the fact. Yes. This could have all been fleshed out below. If there was a specific issue about this weapon, the caliber, if it was next to it, if it was by it, all it had to— Is your argument on the commentary altering the guideline? I think that it does alter it in a way, but I suppose it's trying to give further explanation to people who don't know what that term means. Is it described as semi-automatic? It just says semi-automatic firearm that's capable of accepting a large magazine. How do you fire a semi-automatic weapon without a cartridge? Again, I think we're all just—these are people that all practice criminal law and do these cases all the time, and we're operating under their general assumption of weapons. And because no one objected, they all knew what they were talking about. Is that also impact pronged for that this is something where this is kind of a big, bad weapon, and the idea of this enhancement is to avoid people in this situation having such a big, bad weapon? And so even if technically the magazine wasn't proved to be in the vicinity of, we're not going to exercise our discretion to save someone who had the big, bad weapon. Exactly, who would steal that weapon from a police officer? Right, so that that isn't the kind of case that calls for us to exercise our discretion. Does that intersect? Your Honor, I agree with that completely, and I think you could go further, even if we were to entertain the fourth prong in terms of recidivism. This defendant is a bad guy. He's been in and out of the system since age 15. He has 11 convictions. If you track the timing of his convictions, he goes in for a few years, comes out, goes back in. There's no reason to think that he wouldn't continue to do that. And at the actual time of sentencing, he still had a pending state robbery case that was open, and he admitted completely to committing that crime. And so from the recidivism angle, that's another prong in terms of why we wouldn't want to exercise the fourth prong on this defendant. And if the idea of the guidelines is to separate out among people who commit the same crime but who have different backgrounds, and this one enhancement is, as I said, a felon in possession could be the least harmful. I mean, I don't know how you can describe it that way, but the least harmful handgun or the least likely to cause mass destruction kind of handgun versus the most destructive, you know, an Uzi or whatever, the most destructive. So there's variations among weapons that a felon could possess, all of whom would be under 922 G1. We're trying to distinguish that from somebody who has perhaps a handgun for defense of himself and hearth and home and all but happens to be a felon versus someone who's got a big, bad rifle he stole from a police officer that can go up and shoot up a ball field full of congressmen and women, right? Yes, and the fact is this weapon wasn't recovered, so it is out in the public. Because of his actions, it was taken, it was moved to a house, it was moved within two days, and the police officers could not recover it. So, yes, that's another reason. This weapon is now out there because of this defendant's actions. And that is why his base offense level was at 26 instead of 24, was that we do look at this as a specialized crime. To even have the knowledge of these weapons, to want to move them, sell them, is a big deal, and it doesn't come within the realm of the normal crimes that we're prosecuting. And with regard to the clear and obvious error, I think that even if we were to get to the four prong, it's clear all these parties were operating under the same definition of that term. In a perfect world, would it have been perhaps better to have a little bit more information? Yes, I think the government would concede that possibly would be a better practice. However, if it's not brought to anyone's attention after everyone has the PSR, I think the judge is reasonable in, depending on the defense attorney not objecting, the actual PSR itself and where those facts are derived, and, again, the defendant who is implicitly adopting these during the sentencing hearing to the judge. We do, after all, have an adversarial system, don't we? We do. Not an inquisitorial system. That is true. And I think there's nothing here, when you talk about facts, again, we would rest on Lopez in terms of us not even getting to the fourth prong. But there's a lot of things that show that this weapon did have it. There's nothing that shows it did not. And that, again, is why the government would ask you to follow Lopez in terms of this being an unobjected to fact that should have been handled below. If you don't have any further questions. All right. Thank you, Ms. Higgins. I'll give you your time back. Thank you. All right. We'll save time for a vote. Thank you. Judge Higginbotham, the guideline does, the commentary, does define semi-automatic. Note, too, it says semi-automatic firearm that has the ability to fire many rounds without reloading because at the time of the offense and then we get to the temporal and the spatial requirements that the magazine be attached. Well, I was just suggesting to you with a semi-automatic rifle, you don't, it comes with a, whether it's a lever action 22, which I had when I was eight years old. Correct. I'm sorry. I grew up in the country. And the guideline exists. But it comes with a clip because it doesn't operate. You could make operate it manually. One put in the cartridge to the other. But you're just flying in the face of common sense. And when you describe a semi-automatic Bushmaster, you say, well, gee whiz, it didn't have a clip. And I think that's what's important. They don't even sell them without the clip. I understand that entirely. But this guy had one without a clip. Well, what's important in this case. So, therefore, it's not reachable. That's my problem. I understand. And I'd like to address your problem. My view is about that. I won't decide it based on this case. I've said all I want to say about this, about your arguments and what the public defenders are doing with these cases. I have a high regard for your office. And I'm just concerned about this particular phenomenon. Judge, I think part of that is that after Molina Martinez, a lot of cases get past the third prong. And we end up in fourth prong territory. I'm hoping . . . I never criticized a lawyer representing his client. That's not my point. I understand. All right. The case that you referred to that was reissued yesterday, actually, it was only reissued to correct a typo in the dissent, as you may have noticed. But you'll also notice that the majority in that case was careful to say . . . They talked about the degree of the disparity under prong three. But they said, so, under those facts, we decide to exercise our discretion. The panel did not treat it as automatic. I thought it was fairly careful. Whether or not the result was correct, the panel did treat the fourth prong separately. And, unfortunately, we have some panel opinions that blur that, even after Escalante-Reyes, and that seem to say, well, if the disparity is big under the third prong, we've got to give relief under the fourth. And we all know that's not the law. Correct, Judge. It's your discretion to decide whether to exercise in this particular case based on the facts. And that's why I believe it's important that in this case it was the government's burden to come forth with some evidence. Well, it's always the government's burden. But the problem you have is your client is hardly a very sympathetic person to exercise discretion on. And I don't mean sympathy in the base form. I mean in the facts that you consider, the kind of 3553A type facts. He steals a big, bad weapon, as I've been calling it, from a police officer, and then now it's nowhere to be found and available to some other criminal to go out and do harm with it. And we've seen that. These rifles are very powerful. If I may, Judge, the district court here, and in Guillen-Cruz this was an issue as well as Martinez-Rodriguez, the district court here went through a lengthy sentencing hearing. She talked about his criminal history, the crimes for which he was getting points, the crimes for which he didn't receive points. She talked about the fact that drug addiction was likely the cause of these just incomprehensible crimes and string of crime. And still she decided to not do as the government suggested, which was give the upper part of the guideline range, and she gave the middle. Both Guillen-Cruz and Martinez-Rodriguez speak to that issue. That issue cannot be less plain because the defendant in front of the court is a worse person. But it is a basis. It's not less plain, but it's whether we're going to exercise our discretion. I think we can take into consideration the totality of this defendant's conduct and situation. I agree, and I would throw in there that in the transcript there were efforts by this defendant to assist authorities as well, and I think that that's important, and that's a factor that the court probably took into consideration. I think all things considered, judges, your honors, there was a mistake made. Nobody there wanted to make the mistake, and when the court decided to sentence this defendant, she chose a midpoint of what she believed to be the correct range. I think she'd like a chance to see whether or not the government can prove. There was a magazine. They've supplemented the record to put in Shepard documents. They haven't supplemented the record for this, and it would not be a great cost on the courts. Thank you very much. All right. Thank you very much, Mr. Harris.